WO

**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **CHARLES M. FERRANTE,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **CIV 05-2274 PHX MEA** |
| | ) |
| **JOANNE BARNHART, Commissioner** | ) |
| **of Social Security,** | )    **MEMORANDUM & ORDER** |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

The parties have consented to have all proceedings in this case conducted before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73, Federal Rules of Civil Procedure.

Plaintiff, Mr. Charles Ferrante, brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration, Defendant Joanne Barnhart (the "Commissioner"), denying Plaintiff's claim for disability insurance benefits and Supplemental Security Income ("SSI") pursuant to Title II of the Social Security Act, codified at 42 U.S.C. §§ 401-433.

**I  Procedural History**

Plaintiff filed an application for disability insurance benefits and Supplemental Security Income ("SSI") benefits on or about August 13, 2002.  Administrative Record on Appeal ("R.")

(Docket No. 6A) at 20, 78-80, 81-84.  Plaintiff's application for benefits was denied initially and on appeal.  Id. at 20. Plaintiff requested a hearing regarding his eligibility for benefits, which was conducted before an Administrative Law Judge ("ALJ") on October 8, 2004.  Id.  At the hearing Plaintiff, represented by counsel, amended the alleged onset of disability date to April 27, 2002.  Id.

The ALJ concluded Plaintiff was not disabled as that term is defined by the federal Social Security statutes and denied Plaintiff benefits.  Id. at 30.  The Social Security Appeals Council denied review of this decision, rendering the ALJ's decision the final decision of Defendant, the Commissioner of the Social Security Administration, for purposes of judicial review.  See 20 C.F.R. § 404.981 (2005).

Plaintiff filed a Complaint for Judicial Review of Administrative Determination of Claim for Social Security Disability Benefits on July 29, 2005.  Plaintiff alleges the ALJ erred in his findings of fact and application of the law when concluding Plaintiff was not disabled as that term is defined by the Social Security statutes.

## II  Standard of review

The Court's jurisdiction extends to reviewing the final decision of Defendant denying Plaintiff's application for Social Security disability and Supplemental Security benefits pursuant to 42 U.S.C. § 1383(c)(3).  Plaintiff and Defendant have filed motions seeking judgment as a matter of law.  See Docket No. 11

-2-

& Docket No. 15.[1]

Judicial review of a decision of the Commissioner is based upon the pleadings and the record of the contested decision. See 42 U.S.C. § 405(g) (2003 & Supp. 2006). The scope of the Court's review is limited to determining whether the Commissioner, i.e., the ALJ, applied the correct legal standards to Plaintiff's claim and whether the record as a whole contains substantial evidence to support the ALJ's findings of fact. See id. § 423; Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001). However, if an ALJ's legal error was harmless, i.e., there is substantial evidence in the record to support the ALJ's conclusion on the challenged issue absent the legal error, the case need not be remanded for further proceedings. See Batson v. Commissioner of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004); Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990); Booz v. Secretary of Health & Human Servs., 734 F.2d 1378, 1380 (9th Cir. 1984).

Satisfying the substantial evidence standard requires more than a mere scintilla but less than a preponderance of evidence. See, e.g., Bustamante, 262 F.3d at 953. Substantial evidence has been defined as the amount of relevant evidence a reasonable mind would accept as adequate to support a conclusion. See, e.g., Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). Evidence is insubstantial if it is

---

[1] In an unpublished opinion, the Ninth Circuit Court of Appeals stated: "Although the parties and the District Court refer to the District Court's disposition as 'summary judgment,' such terminology is most inaccurate." Shafer v. Barnhart, 120 Fed. App. 688, 691 (9th Cir. 2005).

overwhelmingly contracted by other evidence in the administrative record.  See Threet v. Barnhart, 353 F.3d 1185, 1189 (10th Cir. 2003); Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983); Robison v. Barnhart, 316 F. Supp. 2d 156, 163 (D. Del. 2004); Rodriquez v. Barnhart, 252 F. Supp. 2d 329, 332 (N.D. Tex. 2003); Rieder v. Apfel, 115 F. Supp. 2d 496, 501 (M.D. Pa. 2000).  If the evidence with regard to an issue is in equipoise, the Court must affirm the decision of the ALJ.  See, e.g., Gathney v. Chater, 104 F. 3d 1043, 1045 (8th Cir. 1997); Books v. Chater, 91 F. 3d 972, 977-78 (7th Cir. 1996).

Because the ALJ is responsible for weighing the evidence, resolving conflicts, and making independent findings of fact, the Court may not decide the facts anew, re-weigh the evidence, and decide whether a claimant is or is not disabled. See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001); Powers v. Apfel, 207 F.3d 431, 434-35 (7th Cir. 2000).  As stated *supra*, if the evidence can support either outcome, the reviewing court may not substitute its judgment for that of the ALJ, but must affirm the ALJ's decision.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001); Casey v. Secretary of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993).

### III   Statement of the Law

Title II of the Social Security Act provides for the payment of benefits to individuals who suffer from a "disability."  See 42 U.S.C. § 423(a)(1)(D) (2003 & Supp. 2006). To be eligible for disability benefits, the claimant must demonstrate they were "disabled" on or before the date they are

-4-

or were "last insured" for disability benefits.   See, e.g., McCartey v. Massanari, 298 F.3d 1072, 1077 n.7 (9th Cir. 2002); Ball v. Massanari, 254 F.3d 817, 819 (9th Cir. 2001).

To establish eligibility for disability benefits under the Social Security Act, the claimant must show: (1) he suffers from a medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months, see 42 U.S.C. § 423(d)(1)(A)(2003 & Supp. 2006); and (2) the impairment renders the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment existing in the national economy.   See id. § 423(d)(2)(A).   If a claimant meets both of these requirements, he is by definition "disabled."   See Tackett, 180 F.3d at 1098.

The Social Security Administration regulations prescribe a five-step sequential process for determining whether a claimant is "disabled."   See 20 C.F.R. § 404.1520 (2005).   The burden of proof is on the claimant throughout steps one through four.   See Tackett, 180 F.3d at 1098.   If a claimant is found to be "disabled" or "not disabled" at any step in the sequential process, there is no need to proceed to the subsequent step(s). See id.

First, the claimant must establish he is not gainfully employed at the time of his application.   See 20 C.F.R. § 404.1520(a)(4)(i) (2005).   Next, the claimant must be suffering from a "medically severe" impairment or "combination of impairments."   Id. § 404.1520(a)(4)(ii).   The third step is to

-5-

determine whether the claimant's impairment meets or equals one of the "listed" impairments included in Appendix 1 to this section of the Code of Federal Regulations.  See id. § 404.1520(a)(4)(iii).  If the claimant's impairments meet or equal one of the impairments listed in Appendix 1, the claimant is conclusively "disabled."  See id.  The fourth step of the process requires the ALJ to determine whether the claimant can perform work similar to work he has performed in the past.  A claimant whose "residual functional capacity" allows him to perform "past relevant work" despite his impairments, will be denied benefits.  See id. § 404.1520(a)(4)(iv).  If the claimant cannot perform his past relevant work, at step five the burden shifts to the Commissioner to demonstrate the claimant can perform other substantial gainful work that exists in the national economy, given his residual functional capacity.  See id. § 404.1520(a)(4)(v); Tackett, 180 F.3d at 1098.

When assessing a claimant's residual functional capacity, the Commissioner must consider the record opinions of physicians pursuant to the Social Security regulations.  Title II's implementing regulations distinguish among the opinions of three types of physicians regarding a claimant's residual functional capacity: (1) those who treat the claimant (the "treating" physicians); (2) those who examine but do not treat the claimant (the "examining" physicians); and (3) those who neither examine nor treat the claimant, but who review the claimant's file (the "nonexamining" or "reviewing" physicians).  See 20 C.F.R. § 404.1527(d) (2005); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

Additionally, the Social Security Administration regulations instruct adjudicators to give greater weight to opinions that are explained than to those that are not explained, see 20 C.F.R. § 404.1527(d)(3) (2005), and to the opinions of specialists concerning matters relating to their specialty over those of nonspecialists. See id. § 404.1527(d)(5). See also Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001). See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) ("We have held that the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings.").

## IV   Statement of Facts

At the time of the hearing before the ALJ, Plaintiff was 49 years old. R. at 56 & 495. Plaintiff was "last insured" for Social Security disability payments through December 31, 2003. Id. at 21, 87. Plaintiff previously worked as a restaurant cook and as a motel maintenance worker. Id. at 93. Plaintiff did not complete high school, but did earn a GED certificate. Id. at 98 & 495.

Plaintiff completed an application for disability benefits on August 9, 2002, alleging he was unable to work as of September 30, 1998. Id. at 81-84. This onset of disability date was amended in 2004 to April 27, 2002. Plaintiff alleged he was unable to work due to chronic pulmonary insufficiency, hepatitis C, upper and lower back problems, chronic pain, and vision problems. Id. at 81.

Plaintiff previously filed an application for disability benefits in January of 1999, alleging disability since September 30, 1998.  Id. at 20.  The application was denied initially and upon reconsideration, and on May 22, 2000, Plaintiff's request for a hearing regarding this decision was withdrawn.  Id. at 42.  Plaintiff, however, did subsequently request and receive a hearing regarding this decision.  Id. at 42.  The application for benefits was denied by an ALJ after a hearing, in April of 2002, which decision was not appealed by Plaintiff to the United States District Court.  Id.  This application for benefits did not allege Plaintiff suffered from depression or other mental ailments.

Plaintiff's physical ailments include hepatitis C, chronic pulmonary disorders, vision disorders, and back pain.  See Plaintiff's Statement of Facts, para. 5.  Because Plaintiff challenges only the ALJ's decision regarding disability with regard to his mental impairments, the Court will not discuss the record with regard to Plaintiff's physical ailments in detail.

In October of 1998, Plaintiff experienced marital problems, called a poison control center, and went to the hospital emergency room, stating he had taken 12 Elavil[2] pills. R. at 213.  Plaintiff stated he had not wanted to commit suicide, but that he was "pretty agitated."  Id.  The doctor noted: "apparently, he does not have any psychiatric history in the past."  Id. at 214.  Plaintiff was examined by a

---

[2] Elavil is a tricyclic anti-depressant medication, a serotonin-reuptake inhibitor, with potentially serious side-effects, including increased symptoms of psychosis, heart block, stroke, tremors or seizures.

psychiatrist, advised to make a follow-up appointment with the psychiatrist, and refused marital counseling. Id. at 214-24.

In April of 2000, a physician noted Plaintiff was unhappy with his physician's opinion regarding his disability status, and that Plaintiff was "feeling mildly depressed." Id. at 243-45.

In a disability report completed by Plaintiff on August 9, 2002, Plaintiff indicated he suffered from chronic pulmonary trouble, hepatitis C, upper and lower back problems, a hole in his left eye and possible cataracts in his right eye. Id. at 92. Plaintiff indicated these problems limited his ability to work due to poor vision, shortness of breath, back pain, and fatigue. Id. At that time, Plaintiff was taking Albuterol, Nasacort and prednisone for his breathing ailments. Id. at 97.

In an activities of daily living report completed by Plaintiff on November 19, 2002, Plaintiff indicated each day he fixed his son breakfast and got his son off to school. Id. at 109. Plaintiff stated he would then "go back to bed, sometimes, have morning coffee try to straighten up house, wait on the mailman eat lunch if I am hungry and wait on son to get home." Id. Plaintiff stated he was on oxygen and took Albuterol and Nasacort daily. Id. Plaintiff stated he cooked dinner for his son, did laundry, and cleaned his house "as needed." Id. at 110. Plaintiff stated he tired easily and lacked energy. Id. Plaintiff averred he shopped twice a month with his son's assistance. Id. Plaintiff alleged he got along well with other people, but did not often visit with friends or relatives due to a lack of transportation. Id. Plaintiff stated he was not

active in any religious organization or club, and that he watched television during the day.  Id. at 111.  Plaintiff averred he could drive, run errands, and manage his bills and other business matters by himself.  Id.

In November of 2002, a disability claims case manager noted "references to depression & an Elavil OD on file.  A psych CE is needed."  Id. at 125.  Plaintiff was referred for a psychiatric evaluation on January 9, 2003.  Id. at 296. Plaintiff was referred to Dr. Doss, a psychologist, by the Arizona Department of Security Disability Determination Services, for a mental-health evaluation.  Id. at 295.  Dr. Doss holds a doctorate degree in education.  Id.  On February 17, 2003, Dr. Doss interviewed and examined Plaintiff.  Id.

Dr. Doss diagnosed Plaintiff as suffering from anxiety disorder (not otherwise specified) and late-onset dysthymic disorder.[3]  Id.  Dr. Doss assessed Plaintiff as having a Global Assessment of Functioning ("GAF")[4] score of 56, indicating Plaintiff suffered "moderate symptoms."  Id.

---

[3] Dysthymia is defined as a chronic mood disorder manifested as depression for most of the day, more days than not, accompanied by some of the following symptoms: poor appetite or overeating, insomnia or hypersomnia, low energy or fatigue, low self-esteem, poor concentration, difficulty making decisions, and feelings of hopelessness.  Stedman's Medical Dictionary 556 (27th ed. 2000).  See also Lee v. Callahan, 133 F.3d 927, 1998 WL 39695, at *4 n.5 (9th Cir.).

[4] The GAF is one of the five axes of the diagnostic system described in the Diagnostic and Statistical Manual of Mental Disorders (4th edition), the "DSM-IV", and considers psychological, social, and occupational functioning.  A GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning."  DSM-IV at 30.  A GAF score of 21-40, on a 100 point scale, indicates multiple symptoms affecting all levels of functioning and a GAF score of 41-70 indicates severe symptoms or serious impairments in social or occupational functioning.

Dr. Doss' notes state:

> [Plaintiff] has experienced a number of psychosocial stressors over the last six years which have taken an emotional toll on him.  This man is just not happy with life and is continually anxious.... He exhibited poor short-term memory and concentration with suspected low average intelligence.  This man has a history of alcohol and polydrug dependence with the possibility of some continual cannabis abuse.  He was unable to recount any coping skills and has no social support system but is able to maintain and retain a meaningful daily life activities because of single parenting his 13-year-old son.  Dysthymia and non-specific anxiety are present as exemplified in disturbed sleep, rumination, and an inability to experience any joy from life.

Id. at 295-96.

The doctor's notes further state: "Mr. Ferrante was fully capable of providing background data on himself and did so in a logical and coherent manner."  Id. at 296.  Plaintiff reported to Dr. Doss he had worked in oil fields, doing plumbing, cooking, construction, masonry and mining.  Id. at 297.  Plaintiff reported to Dr. Doss he had worked doing maintenance for ten years and that he enjoyed this job.  Id. Plaintiff stated he quit this job because his physician recommended he quit due to his pulmonary problems.  Id. (However, the doctor's notes also state: "He is not sure if he got fired or quit the job.").

> The client was asked what currently keeps him from working to which he replied both physical and mental problems.... Mentally and emotionally, he stated he has problems dealing with all the stressors in his life. He has nightmares and sleep problems. However, Charles has no current mental health treatment and no history of mental health treatment.

-11-

<u>Id.</u>  Dr. Doss noted Plaintiff has two adult children who also

resided in Kingman, Arizona.  <u>Id.</u> at 297-98.  Plaintiff reported

he had been depressed since his brother was murdered in 1997.

<u>Id.</u> at 298.[5]

Dr. Doss' notes further state:

> Throughout his assessment, it was hard to get
> straight answers from this man.  He tended to
> mumble and ramble.  Perhaps his missing teeth
> added to his difficulty in articulating.
> Nonetheless, he appeared sincere about
> participating in the evaluation.
> The psychologist had to sometimes refocus him
> on the task at hand.  His answers were
> basically logical and coherent.  He seemed
> grateful for the time given him for this
> evaluation.

<u>Id.</u>

Dr. Doss noted Plaintiff interacted about once per week

with people who came to his home for Bible study.   <u>Id.</u>

Plaintiff reported that, in an average day, he drank coffee, got

his son off to school, did the dishes and fed his dogs.  <u>Id.</u>

Plaintiff reported he did housekeeping and looked after his own

hygiene, and spent the day and the evening watching television.

<u>Id.</u> at 298-99.

Dr. Doss evaluated Plaintiff as having very poor short-

term memory and low average cognitive functioning.  <u>Id.</u> at 299.

Dr. Doss opined that Plaintiff's concentration was poor.   <u>Id.</u>

Dr. Doss noted Plaintiff admitted previously drinking to excess,

but that his drinking issues were in full remission.  <u>Id.</u>  Dr.

Doss stated:

---

[5]   The Court notes that, on September 2, 1992, a physician's note
stated Plaintiff reported: "Brother got killed few weeks ago."  R. at 149.
The doctor's notation states: "Also stress at job.  Does not feel like
killing himself....[illegible] stress, anxiety"  <u>Id.</u>

-12-

> This man also appears to be a polydrug
> dependent individual in sustained full
> remission with the possibility of still some
> cannabis use. He was quick to say that he
> does not consider marijuana a drug. However,
> this man was arrested and served time in
> prison for possession of marijuana with
> intent to sell.
> Charles used cannabis, heroin and LSD on a
> regular and excessive basis. When asked for
> the last time he used drugs, the psychologist
> had to ask the question four times. He
> stated his last drug use was 15 years ago,
> but bear in mind he does not consider
> marijuana a drug.

Id.

The doctor's notes further state:

> For physical pain, he does nothing as is also
> the case for emotional pain. He has devoid
> of coping skills (sic)... This man was asked
> directly about depression to which he replied
> 'kinda.' He described himself as bummed out,
> more than severely depressed. He has felt
> this way for years but could not say when it
> started... This man takes no medications for
> depression and has never been medicated for
> it. He denied any history of severe
> depression and appears to be dysthmic rather
> than into a severe vegetative state of major
> depression. His biggest problem is how he
> punishes himself for not being able to work.

Id. at 299-300. The doctor described Plaintiff's mental difficulties as being of "equal proportion" to his physical difficulties at that point in time. Id. at 300. The doctor opined Plaintiff could not "Be happy. Quit worrying. Be pain-free." Id. at 300-01.

Dr. Doss completed an assessment of Plaintiff's ability to do work-related activities on a daily basis in a regular work situation. Id. at 302. Dr. Doss concluded Plaintiff's ability to do work-related activities on a daily basis was "fair," i.e., seriously limited but not precluded, in the areas of dealing

-13-

with the public, maintaining attention or concentration, and reacting predictably in social situations.  Id. at 302-03.  Dr. Doss opined Plaintiff had "poor" or no capacity to deal with work stress or to behave in an emotionally stable manner.  Id.

On March 11, 2003, Dr. Enos, a state-appointed psychologist, reviewed Plaintiff's records, including Dr. Doss' report, and completed an assessment of Plaintiff's mental residual functional capacity.  Id. at 333 & 337.  The doctor noted Plaintiff suffered from affective disorder, anxiety-related disorder, and personality disorder.  Id. at 337.

Dr. Enos, a reviewing psychologist, opined Plaintiff suffered from the medically determinable impairment of dysthymia.  Id. at 340.  Dr. Enos also opined Plaintiff was not moderately or markedly limited with regard to any mental impairment.  Id. at 333.  Dr. Enos stated Plaintiff showed signs of persistent disturbances of mood or affect, and pathological dependence, passivity or aggressivity.  Id. at 344.  With regard to Plaintiff's functional limitations, the doctor opined Plaintiff had mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace, with no episodes of decompensation.  Id. at 347.

Dr. Enos concluded Plaintiff was not significantly limited with regard to working with others and carrying out short and simple instructions.  Id. at 333.  Dr. Enos stated there was no evidence of limitations with regard to the ability to completely a normal work-day and work-week, and no evidence Plaintiff's ability to appropriately interact with the public

-14-

was limited.  Id. at 334.  The doctor stated:  "Claimant can remember and carry out simple instructions, work cooperatively, do personal planning, interact with peers, public and supervisors, work within a routine and a schedule and complete a routine work week within his physical limitations."  Id. at 335.

On July 18, 2003, Dr. Waldman, a non-examining Ph.D., completed a Psychiatric Review Technique form and a mental residual functional capacity assessment regarding Plaintiff's condition.  Id. at 424.[6]  Dr. Waldman opined there was insufficient evidence to support the conclusion Plaintiff suffered from a severe mental impairment.  Id.  Dr. Waldman opined Plaintiff had mild limitations regarding maintaining social functioning and in maintaining concentration, persistence, or pace.  Id. at 434.  This doctor concluded there was insufficient evidence to determine if Plaintiff suffered from episodes of decompensation.  Id. at 434.

Plaintiff, represented by counsel, testified at the hearing before the ALJ on October 8, 2004.  Plaintiff testified his ability to work was affected by his back pain, his fatigue, his depression, and his vision problems.  Id. at 498.  Plaintiff testified he had trouble sleeping and had little energy or appetite.  Id. at 500.  Plaintiff stated he rarely left his home and that he did not often associate with other people.  Id. Plaintiff stated he was irritable, nervous, and that he cried often.  Id. at 500-01.  Plaintiff stated he did not seek

---

[6] Dr. Waldman's website indicates he holds a Ph.D. in educational psychology and that he has practiced as a clinical psychologist since 1979.

professional treatment for his depression because his son had been treated for psychological problems without success. <u>Id.</u> at 502.

Plaintiff asserted that, when he got stressed, he couldn't catch his breath, which caused him to panic. <u>Id.</u> at 503. Plaintiff testified he did housekeeping, cooking, grocery shopping, and laundry. <u>Id.</u> at 504.

A neurologist, Dr. Goren, testified at Plaintiff's hearing. The doctor did not examine Plaintiff, but reviewed Plaintiff's medical records, including Dr. Doss' report, prior to the hearing. <u>Id.</u> at 508-09. The doctor opined that Plaintiff's problems breathing when stressed "could be anxiety attacks." <u>Id.</u> at 509. The doctor stated the breathing problems could also be due to asthma, but were probably not due to chronic pulmonary disease. <u>Id.</u> Dr. Goren noted a consultative evaluation by a Dr. Barker in January of 2003 had produced a notation that Plaintiff possibly exaggerated his symptoms. <u>Id.</u> at 509-10.[7]

---

[7] Dr. Barker, an M.D., examined Plaintiff on January 29, 2003, at the behest of the Arizona Department of Economic Security Disability Determination Services. R. at 280. Dr. Barker noted Plaintiff reported he borrowed other people's cars to do his shopping, banking, and errands, and that Plaintiff did housework, cooking, and cleaning. <u>Id.</u> Plaintiff told Dr. Barker he took "early retirement" from his job doing motel maintenance. <u>Id.</u> at 281. The doctor noted:

> No actual fatigue, weakness, fever, night sweats or sleep disturbance.... He has oxygen use at home. He has not used it for some time.... No vision problems other than bifocals, that is he has no cataracts or glaucoma and has good color vision.... He has not had any chest pains, wheezing or asthma history as stated... It is unknown about depression. There was a statement about that in the past.

<u>Id.</u> The doctor continued: "He appears to have been doing some weightlifting from a strong muscle tone..." <u>Id.</u> at 282.

Dr. Goren, who had not examined Plaintiff but who had reviewed Dr. Doss' report in addition to Plaintiff's other medical records, questioned whether a GAF of 56 could be aligned with Dr. Doss' narrative views on Plaintiff's ability to do specific job-related tasks.   _Id._ at 510.   Dr. Goren stated: "Further, I had already independently of what I heard from Mr. Ober [Plaintiff's counsel], I had already raised questions in my own mind about the credibility because in the records claimant seems to be complaining that he has severe pulmonary disease." _Id._   The ALJ replied: "Well, I'll determine credibility."   _Id._

Dr. Goren opined that, with regard to Plaintiff's mental symptoms, Plaintiff could not perform work involving high production quotas and would be limited to work with "limited interpersonal interaction."   _Id._ at 510.   Plaintiff's counsel asked Dr. Goren if "a current psychiatric or psychological evaluation [would] help clarify" whether Plaintiff's breathing difficulties could be anxiety-related, to which the doctor replied: "It might..."   _Id._ at 511.   In response to another question by counsel, Dr. Goren indicated Plaintiff might have difficulty tolerating customary work pressure if he experienced breathing problems when stressed.   _Id._   Dr. Goren also opined the relevant issue would be the severity of the problem.   _Id._

Plaintiff's counsel requested the ALJ order a psychiatric consultative examination based on Dr. Goren's testimony.   _Id._ at 512.   The ALJ took the request "under advisement."   _Id._   In his written decision denying benefits the ALJ indicated he did not order another psychiatric consultative examination because, at the time of the hearing, Plaintiff was

not seeking mental health treatment.  Id. at 21.

A vocational expert also testified at Plaintiff's hearing before the ALJ.  The vocational expert testified Plaintiff could not return to his past relevant work in building maintenance due to his physical limitations.  Id. at 514.  The vocational expert testified an individual who could not perform work involving high production quotas and who would be limited to work with limited interpersonal interaction could perform work as a cashier.  Id. at 515-16.  The vocational expert testified an individual with all of the mental limitations assessed by Dr. Doss would be precluded from working because they could not deal with work stress or behave in an emotionally stable manner.  Id. at 516-18.

On October 29, 2004, the ALJ issued a decision finding Plaintiff was not disabled as that term is defined by the Social Security Administration.  Id. at 20-31.  The ALJ's opinion states:

> In this case, in a hearing decision dated April 26, 2002[,] Administrative Law Judge Alden found the claimant was "not disabled" [].  Thus, Chavez and AR 97-4(9) require adherence to this finding of nondisability unless the claimant establishes changed circumstances.  [ALJ Alden] found the claimant had the following impairments that are considered severe under the Social Security Regulations: low back pain, hepatitis C, limited vision of the left eye and chronic obstructive pulmonary disease. Review of the new medical evidence of record submitted after the April 26, 2002 hearing decision establishes that the claimant has the following new severe impairments: mild affective disorder and mild anxiety disorder. These new impairments are considered "changed circumstances."  Accordingly, the undersigned finds the claimant has rebutted the presumption of continuing nondisability by showing changed circumstances.

-18-

> ...
> [R]eview of the new medical evidence of
> record submitted after the April 26, 2002
> decision establishes that the claimant's left
> eye impairment has worsened such that he has
> no depth perception in that eye.
> Furthermore, the new evidence submitted after
> the April 26, 2002 hearing decision
> establishes that the claimant's mental
> impairments adversely affect his ability to
> deal with the public. ...

Id. at 21-22.

The ALJ proceeded to the five-step sequential process for determining if Plaintiff was disabled. The ALJ concluded Plaintiff had impairments that were severe, i.e., hepatitis C, history of chronic obstructive pulmonary disorder, left eye vision disorder, low back pain, mild affective disorder, and mild anxiety disorder. Id. at 22. The ALJ concluded that, based on Dr. Goren's testimony, none of Plaintiff's impairments met or equaled a listed impairment. Id. at 23. The ALJ noted: "No treating or examining physician has indicated findings that would satisfy the severity requirements of any listed impairment." Id.

The ALJ continued to a recitation of his findings regarding Plaintiff's physical residual functional capacity, and concluded Plaintiff was physically capable of performing light exertional work. Id. The ALJ further stated, with regard to Plaintiff's residual functional capacity:

> [T]he undersigned does not find the
> claimant's allegations that he is incapable
> of all work activity credible because of
> significant inconsistencies in the record as
> a whole. The course of medical treatment,
> minimal objective findings, and minimal
> abnormal clinical findings in this case is
> not consistent with allegations of disabling
> pain and physical symptoms.

-19-

Id. The ALJ noted that, although Plaintiff stated he had severe vision problems, he had a driver's license and drove despite his limited vision.   Id.   The ALJ noted Plaintiff's vision in his left eye was abnormal but that, despite Plaintiff's claims to the contrary, Plaintiff could see 20/20 with his right eye.   Id. at 24.    The ALJ  further  noted  the  contradiction  between Plaintiff's claims of chronic pulmonary disease and the lack of objective  clinical  findings  in  the  record  that  Plaintiff actually suffered from pulmonary disease.   Id.   The ALJ noted Plaintiff had been hospitalized twice for an asthma attack and that Dr. Goren opined Plaintiff's breathing problems could be caused by anxiety.   Id.   The ALJ further noted that the clinical evidence in the record, or the lack thereof, and Plaintiff's daily activities did not comport with Plaintiff's allegations that he suffered from disabling back pain.   Id. at 24-25.

The ALJ stated:

> Turning  to  the  claimant's  allegations  of
> mental  impairments,  the  undersigned  must
> evaluate  the  severity  of  the  impairments
> using  the  two-pronged  analysis  outlined  in
> the   Regulations...the   undersigned   will
> determine   the   degree   of   functional
> limitation,  if  any,  resulting  from  the
> [mental]  impairment(s)  using  four  broad
> functional areas: activities of daily living;
> social   functioning;   concentration,
> persistence,  or  pace;  and  episodes  of
> decompensation [].
> The  claimant  has  had  no  mental  health
> treatment.   As  such,  he  underwent  a
> psychological  evaluation  at  the  request  of
> the  State  agency  in  February  of  2003  with
> Minette Nance Doss EdD []....
> Dr. Doss opined the claimant's replies to the
> cognition questions suggested lower average
> functioning.  His immediate memory was good,
> but  short-term  memory  was  quite  poor  as  he
> could  not  remember  any  of  the  three  words
> after a five-minute interview interval.
> In addition, the claimant described himself

as bummed out rather than as severely
depressed. He said he worried constantly and
excessively. He stated he was worried about
his daily existence. The claimant was
diagnosed with anxiety disorder not otherwise
specified, dysthymic disorder later onset and
history of alcoholic and polysubstance abuse
in full remission. Dr. Doss assessed the
claimant with a Global Assessment of Function
(GAF) score of 56, which is consistent with
moderate symptoms.
On the basis of this evidence, the
undersigned concludes the claimant's mental
impairments cause only slight limitations in
his activities of daily living and social
functioning. The claimant is able to take
care of his household chores, cook meals, go
grocery shopping and take care of his son as
a single parent. ... In addition, while the
claimant said he had no friends, he
acknowledged that he meets with a Bible study
group once a week. ...
Based on the evidence and giving the claimant
the great benefit of the doubt as there is
little evidence in this area, the undersigned
finds the claimant has moderate limitations
in his concentration, persistence or pace.
On mental status examination in February of
2003 the claimant exhibited poor short-term
memory and concentration with suspected low
average intelligence []. There is no
evidence of any episodes of decompensation in
a work or work like setting....
Therefore, the undersigned finds the claimant
has the following mental limitations. He is
limited to a low stress work without high
production quotas that have a minimal
interaction with the public, coworkers and
supervisors.

Id. at 25-26.

The ALJ concluded Plaintiff was not entirely credible

regarding both his physical and mental limitations. Id. at 27.

The ALJ stated: "Regarding his mental health allegations, the

claimant declines to receive mental health treatment in Kingman.

One would expect if one were as disabled as suggested by the

claimant that one would seek mental health treatment." Id.

With regard to the record regarding Plaintiff's mental

impairments, the ALJ stated:

> The undersigned concludes that the opinion of
> Dr. Goren, the medical expert who testified
> at the hearing, is partially persuasive.  Dr.
> Goren opined the claimant's mental
> impairments would limit him to simple work
> without high production quotas and minimal
> contact with supervisors, the public, and co-
> workers.  This opinion is well supported by
> the medical evidence. ...
> Furthermore, the undersigned rejects the
> February of 2003 opinion rendered by Dr.
> Doss, the consultative evaluator.  She opined
> the claimant had no ability to deal with work
> stresses and behave in an emotionally stable
> manner [].  She indicated this was because
> the claimant was "worn down emotionally."
> However, being worn down emotionally is
> certainly not a mental impairment.  Moreover,
> there is no evidence to support her
> conclusion that the claimant can't handle
> stress or behave socially.  The claimant's
> activities indicate he is able to grocery
> shop and host a weekly bible study meeting in
> his home.  *His performance on the mental
> status examination was satisfactory and did
> not show any signs of panic or anxiety.  The
> undersigned also finds that the GAF of 56
> assessed by Dr. Goss is not supported by the
> evidence*.  As such, her opinion is rejected
> as it is not supported by the significant
> weight of the medical evidence when taken as
> a whole.

Id. at 27-28 (emphasis added).

The ALJ concluded Plaintiff retained the physical
residual functional capacity for light work.  The ALJ further
concluded Plaintiff's mental limitations required him to perform
work which was limited to "low stress [] without high production
quotas that have a minimal interaction with the public,
coworkers and supervisors."  Id. at 26-27.  The ALJ determined
that Plaintiff could not return to his past relevant work, but
that he could perform a job available in the national and local
economy, i.e., a cashier.  Id. at 28.

**V**  **Analysis**

**A. Plaintiff contends the ALJ erred by failing to credit Dr. Doss' opinion regarding Plaintiff's work-related limitations.**

Plaintiff asserts the ALJ erred by not giving sufficient reasons for rejecting Dr. Doss' opinion regarding the extent of Plaintiff's functional mental limitations. Plaintiff further contends the ALJ erred by substituting his opinion regarding Plaintiff's mental ailments for those of Dr. Doss, by stating "[Plaintiff's] being worn down emotionally is certainly not a mental impairment." Docket No. 15 at 4.

Respondent contends the ALJ could properly discount Dr. Doss' opinion based on the opinion of a non-examining medical source, i.e., the opinion of Dr. Goren. Defendant emphasizes Plaintiff never sought or received mental health treatment, nor has he expressed any intention to seek such treatment and yet he asserts he is completely disabled by his mental condition. Additionally, Defendant notes the ALJ did not entirely discount Dr. Doss' opinion, and that Dr. Doss herself opined Plaintiff was not completely disabled, i.e., he was capable of taking care of himself, his teenage son, and managing his household. Defendant notes that, in addition to the opinion of the neurologist testifying at the hearing, two state agency doctors who reviewed Plaintiff's records concluded Plaintiff was only "mildly" limited with regard to work because of his mental impairments.

An examining physician's findings can constitute substantial evidence to establish a claimant's residual functional capacity and the ALJ may reject those findings only

-23-

for "clear and convincing," or specific and legitimate reasons, supported by substantial evidence in the record.  Cf. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).[8]

The ALJ stated "clear and convincing" reasons for rejecting Dr. Doss' conclusion Plaintiff would be completely incapable of working due to his mental impairments. Additionally, the ALJ's decision to reject some of the functional limitations assessed by Dr. Doss is supported by substantial evidence in the record.

The ALJ noted internal consistencies between Dr. Doss' narrative statements about Plaintiff and her conclusions regarding his mental limitations.  Dr. Doss' opinion Plaintiff had poor or no ability to behave in an emotionally stable manner in a work setting was contradicted by the record, which indicated no such episodes.  Plaintiff did not, apparently, recount to Dr. Doss any episode of emotionally unstable behavior in a work or social setting.  Dr. Doss did not, apparently, believe Plaintiff's mental condition was so severe that she recommended he seek treatment or be prescribed medication for dysthymia or an anxiety disorder.

The ALJ noted the lack of clinical findings supporting Dr. Doss' conclusion Plaintiff was completely unable to function in a work setting because of his work-related stress, and that he is completely unstable in a work setting.  There was an absence of clinical findings to support Dr. Doss' conclusions:

---

[8] In Reddick, the Ninth Circuit concluded that a treating physician's opinion which was not contradicted could be discounted only for clear and convincing reasons.  A treating physician's opinion which was contradicted may be discounted only for "specific and legitimate reasons" supported by substantial evidence in the record.  See 157 F.3d at 725.

when asked the clinical basis for her opinion of Plaintiff's mental functional capacity, Dr. Doss stated Plaintiff was "worn down emotionally." This is not a clinical basis for the conclusion Plaintiff has little or no ability to function in a stable manner or that Plaintiff experiences work-related stress to the extent he is incapable of any gainful employment. An examining physician's opinion regarding a claimant's functional capacity may properly be discounted if it is not based on clinical and medical findings in the record. See Batson, 359 F.3d at 1195, Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001), Morgan, 169 F.3d at 600-02.

Furthermore, any legal error was harmless, i.e., the ALJ's opinion that Dr. Doss' ultimate conclusions regarding Plaintiff's residual mental functional capacity could be discounted is supported by substantial evidence in the record, i.e., Dr. Goren's opinion, Dr. Enos' opinion, and Dr. Waldman's opinion. There is a noted lack of evidence to support Dr. Doss' conclusion Plaintiff's mental condition renders him completely unable to work; the only evidence supporting her conclusion is Plaintiff's testimony at the hearing, which arguably does not even support the contention Plaintiff suffers severe work-related stress and is completely unstable in a work setting.

Plaintiff's testimony and Dr. Doss' unsupported opinion do not constitute "substantial" evidence to support a finding of disability. See Bowser v. Commissioner of Soc. Sec., 121 Fed.

App. 231, 237-38 (9th Cir. 2003).[9]   The evidence in the record that Plaintiff is disabled is insubstantial because it is overwhelmingly contradicted by other evidence in the administrative record, i.e., the opinions of Dr. Enos, Dr. Walden, and Dr. Goren.   See Threet, 353 F.3d at 1189.

**B. Plaintiff contends the ALJ erred by relying on the testimony of a non-examining neurologist, Dr. Goren, in reaching his conclusion regarding Plaintiff's mental impairments.**

At Step 4 of the five-step sequential process used to determine if a claimant is "disabled," the ALJ must examine the claimant's "residual functional capacity and the physical and mental demands" of the claimant's past relevant work.   20 C.F.R. §§ 404.1520(e) & 416.920(e) (2005).   To find that the claimant

---

[9] In Bowser, the ALJ determined at step three of the evaluation that the plaintiff's depression was not a severe "medically determinable mental impairment."
The claimant bears the burden of furnishing evidence of medically determinable impairments. [] "Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, or physiological abnormalities ...." § 404.1529(b). ...
***
Regarding Claimant's alleged depression, Bowser challenges the ALJ's determination that her alleged depression does not constitute a medically determinable mental impairment which impacts her residual functional capacity. The ALJ properly found that Bowser's alleged depression did not constitute a medically determinable impairment. The ALJ cited numerous reasons in support of his decision not to credit Bowser's allegations of depression. Specifically, the ALJ noted that Claimant failed to seek treatment for depression, she was not referred to any mental health specialist, and the records of treating physician Gregory White, M.D., do not document any complaints of depression. ... In addition, there is no record evidence of hospitalizations, she never alleged mental difficulties on her Disability Report, and she testified that "I've ben [sic] in a state of depression for a while there. I think I'm getting a little better now"...
Finally, the ALJ observed that the record is devoid of evidence or testimony that she ever sought assistance from any other source for depression.

is not disabled at Step 4, the claimant must be able to perform, based on their residual functional capacity: (1) the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of an occupation as generally required by employers throughout the national economy.  <u>Pinto</u>, 249 F.3d at 844-45.

In this case, when assessing Plaintiff's residual functional mental capacity, the ALJ did not have before him the opinion of a treating mental health professional.  The ALJ had the opinion of Dr. Doss, an examining psychologist, who conducted a consultative examination on one occasion and who has a degree in education, and a nonexamining reviewing physician with a degree in neurology, i.e., Dr. Goren.  The ALJ also had in the record before him the opinions of Dr. Enos and Dr. Waldman, both nonexamining reviewing psychiatrists.

The opinion of an examining physician is entitled to greater weight than that of a nonexamining physician, and, if contradicted by other medical opinions, can only be rejected for specific and legitimate reasons supported by substantial evidence in the record.  <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005); <u>Lester</u>, 81 F.3d at 830-31; <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995).  The opinion of non-examining physician, alone, is sufficient to support an ALJ's decision finding a claimant not disabled, if the non-examining physician's opinion is in accordance with independent substantial evidence in the record.  <u>See Morgan</u>, 169 F.3d at 600; <u>Saelee</u>, 94 F.3d at 522.

The ALJ gave specific and legitimate reasons, supported by substantial evidence in the record, for rejecting Dr. Doss' opinion that Plaintiff was completely mentally disabled. _See Saelee_, 94 F.3d at 522-23 (holding that the "ALJ's primary reliance on the findings of ... a medical consultant was not an abuse of discretion" because other evidence in the record supported the non-treating, non-examining physicians' findings); _Matney v. Sullivan_, 981 F.2d 1016, 1020 (9th Cir. 1992) (treating physician examined claimant only once and offered an opinion several months later that contradicted the physician's clinical evaluation). _See also Allen v. Heckler_, 749 F.2d 577, 579, 580 (9th Cir. 1984) (holding that if the evidence supports more than one rational interpretation, this Court must uphold the decision of the ALJ and must not second-guess the ALJ's choice among conflicting medical opinions).

Additionally, as stated _supra_, any legal error in this regard would have been harmless error, because the Court concludes there is substantial evidence in the record to support the ALJ's conclusions regarding Plaintiff's residual functional mental capacity. Because Dr. Goren's opinion, alone, is sufficient to support the ALJ's decision finding Plaintiff not disabled because it is in accordance with independent substantial evidence in the record, i.e., the functional limitations assessed by both Dr. Enos and Dr. Walden, there was no error in the ALJ's decision to adopt Dr. Goren's opinion. _See Morgan_, 169 F.3d at 600; _Saelee_, 94 F.3d at 522.

**C. Plaintiff alleges the ALJ erred by failing to fully and fairly develop the record.  Plaintiff asserts the ALJ erred by denying Plaintiff's request for a psychiatric consultative examination.**

Plaintiff contends the ALJ should have further developed the record with regard to the cause of Plaintiff's breathing problems when stressed or anxious, based in part on Dr. Goren's statement that further inquiry "might" determine the exact cause of this limitation.  Plaintiff argues the ALJ erred by not assisting in developing the record, citing <u>Armstrong v. Commissioner of Soc. Sec. Admin.</u>, 160 F.3d 587 (9th Cir. 1998),[10] and <u>Morgan v. Sullivan</u>, 945 F.2d 1079 (9th Cir. 1991).  Plaintiff contends the ALJ abused his discretion "by failing to follow the regulatory procedures for ordering a consultative examination."  Docket No. 11 at 10.

> [T]he Commissioner has broad latitude in ordering a consultative examination.  The government is not required to bear the expense of an examination for every claimant.  Some kinds of cases, however, do normally require a consultative examination, including those in which additional evidence needed is not contained in the records of the claimant's medical sources, and those involving an ambiguity or insufficiency in the evidence that must be resolved.

<u>Reed v. Massanari</u>, 270 F.3d 838, 842 (9th Cir. 2001).

---

[10] In <u>Armstrong</u>, the plaintiff alleged the ALJ erred by inferring a date of onset of disability without calling a medical expert to testify as to the date of onset of the plaintiff's disabilities.  The Ninth Circuit concluded the date of onset was unclear and, therefore, that the ALJ erred.
> [W]here a record is ambiguous as to the onset date of disability, the ALJ must call a medical expert to assist in determining the onset date. ...
> The ALJ can fulfill this responsibility by calling a medical expert or where medical testimony is unhelpful, exploring lay evidence including the testimony of family, friends, or former employers to determine the onset date.

<u>Armstrong v. Commissioner of Soc. Sec. Admin.</u>, 160 F.3d 587, 590 (9th Cir. 1998).

The burden is on the claimant at steps one through four to establish that he is disabled. <u>Bayliss</u>, 427 F.3d at 1217. If the ALJ determines that he has adequate evidence to determine if the claimant is disabled, he is not required to seek further evidence of disability. <u>Id.</u> Where there is ambiguity or an insufficiency of evidence the ALJ should order a "consultative examination." <u>Reed</u>, 270 F.3d at 842; <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1166 (10th Cir. 1997). However, where there is sufficient evidence in the record for an ALJ to conclude that the claimant's alleged incapacitating impairment does not render them completely disabled, the ALJ does not abuse his discretion by failing to order further psychological evaluation. <u>See</u> <u>Hawkins</u>, 113 F.3d at 1165.

The ALJ did not err by rejecting Plaintiff's request for additional mental health consultation. The Court notes that, regardless of the cause of Plaintiff's breathing problems when stressed, the ALJ took this limitations into account when determining Plaintiff's residual functional mental capacity. Additionally, both <u>Armstrong</u> and <u>Morgan</u> are distinguishable from the case before the Court. In <u>Morgan</u> and <u>Armstrong</u>, the Ninth Circuit found the ALJ erred by determining the onset date of a claimant's mental disorder without the assistance of a medical expert. This matter is also distinguishable from <u>Tonapetyan v.</u> <u>Halter</u>, 242 F.3d 1144 (9th Cir. 2001), a case wherein the testifying medical expert repeatedly stated that a more detailed record was necessary, the Ninth Circuit also concluded that the

ALJ erred by not further developing the record.[11]

**D. Plaintiff asserts the ALJ erred by not determining Plaintiff's function-by-function mental residual functional capacity.**

"In order for the testimony of a VE to be considered reliable, the hypothetical posed must include all of the claimant's functional limitations, both physical and mental[,] supported by the record." Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) (citation and internal quotation marks omitted). An "ALJ is not bound to accept as true the restrictions presented" by the claimant in posing an otherwise legitimate hypothetical question to a vocational expert. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Additionally, the "exclusion of some of a claimant's subjective complaints in questions to a vocational expert is not improper if the [ALJ] makes specific findings justifying his decision not to believe the claimant's testimony about claimed impairments such as pain." Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988); see also Magallanes v. Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989); Embrey v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988).

The ALJ's findings regarding Plaintiff's residual mental functional capacity were sufficiently stated and supported by substantial evidence in the record. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000); Diaz v. Chater, 55 F.3d 300, 307-08 (7th Cir. 1995) ("ALJ need not provide a

---

[11] Additionally, in Jackson v. Barnhart, 67 Fed. App. 711 (3d Cir. 2003), the court concluded the ALJ did not err by failing to order the claimant to undergo intelligence testing to determine if she met the listing for mental retardation, where a psychiatric review identified the impairment of affective disorders, but noted there was "[no] evidence of a sign or symptom cluster or syndrome" that might evidence mental retardation.

complete written evaluation of every piece of testimony and evidence"). Compare Groeper v. Sullivan, 932 F.2d 1234, 1239 (8th Cir. 1991).

Although a more specific function-by-function analysis would have been desirable, the ALJ's assessment of Plaintiff's residual mental functional capacity was not inadequate as a matter of law. The ALJ's failure to enunciate a different function-by-function evaluation of Plaintiff's non-exertional limitations in his written opinion was harmless error because the ALJ applied the proper legal standard. See Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993); Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1990).

**E. Plaintiff contends the ALJ erred by discounting Plaintiff's testimony regarding his mental impairments without providing clear and convincing reasons for rejecting this testimony.**

An ALJ must provide "specific, cogent reasons," supported by substantial evidence in the record, for his disbelief of a claimant's statements regarding the claimant's disability. Lester, 81 F.3d at 834; Bunnell, 947 F.2d at 345. See also Jernigan v. Sullivan, 948 F.2d 1070, 1073 (8th Cir. 1991). Unless there is affirmative evidence indicating that the claimant is actually malingering, the ALJ's reasons for rejecting the claimant's testimony must be clear and convincing. See Lester, 81 F.3d at 834; Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989). The ALJ must specifically identify what portion of the testimony in the record is credible and what testimony undermines the claimant's complaints. See Lester, 81 F.3d at 834; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). "To find the claimant not credible the ALJ must rely

either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between his testimony and his own conduct, or on internal contradictions in that testimony." <u>Light v. Social Sec. Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997).

> To determine whether the claimant's testimony regarding the severity of [his] symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. In evaluating the credibility of the symptom testimony, the ALJ must also consider the factors set out in [Social Security Ruling] 88-13.

<u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996) (internal citations omitted).

The record contains substantial evidence from which the ALJ could conclude Plaintiff was not entirely credible in reporting his mental limitations and in alleging that he could not work because of his mental condition. Dr. Doss noted Plaintiff was not completely forthcoming with information about his mental condition and, potentially, his continued use of marijuana, and that he was potentially rationalizing his continued use of marijuana. Dr. Goren testified his review of the record indicated some of Plaintiff's physicians did not find him completely credible.

Plaintiff's recitation of his daily activities, i.e., that he did not socialize more because of a lack of

transportation, was not consistent with other evidence in the record, i.e., his testimony he did not socialize more because of his mental condition.    Plaintiff's recitation of his mental problems was not consistent with other evidence in the record; for instance, Plaintiff alleged in November of 2002 in an activities of daily living report that he suffered sleep disturbances but in February of 2003 during a physician's examination he denied any sleeping problems.  Additionally, the ALJ could properly consider that Plaintiff had the mental capacity to take care of his household, his son, and his pets. The fact that Plaintiff independently handled his financial, parenting, and household responsibilities, is evidence Plaintiff was exaggerating when he said his pain and mental impairments rendered him completely disabled.

Additionally, as Plaintiff apparently allows by acceding to the ALJ's conclusion he is not completely physically disabled, the objective and minimal clinical findings in the record do not support Plaintiff's claims of physical disability, thereby calling into question Plaintiff's credibility regarding his mental limitations.    As Defendant notes, although Plaintiff's appeal of the ALJ's decision relates only to the ALJ's findings regarding Plaintiff's mental functioning, Plaintiff initially predicated his claim of disability solely on physical ailments which are not supported by the record, thereby minimizing his credibility with regard to his mental impairments.

Plaintiff's case is similar to the reported cases in which the reviewing court held the ALJ's credibility

determination was supported by substantial evidence.  See Morgan v. Commissioner of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ could properly conclude claimant's reported disability was exaggerated where claimant was able to fix meals, do laundry, work in the yard, and occasionally care for his friend's child); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (upholding ALJ's credibility determination where claimant did not receive medical treatment for three years and did not report any mental limitations resulting from her condition but then testified that pain and medication interfered with her ability to think); Orteza, 50 F.3d at 750 (finding ALJ properly discredited claimant's testimony because the claimant regularly performed various household chores such as cooking, doing the dishes, going to the store, and visiting relatives); Matthews v. Shalala, 10 F.3d 678, 679-80 (9th Cir. 1993) (affirming ALJ's determination based on claimant's housecleaning, light gardening and shopping); Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's testimony that "she was able to take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries" was inconsistent with her claimed inability to perform all work activity).   Cf. Meanel, 172 F.3d at 1114 (holding that the ALJ was entitled to reject the claimant's testimony regarding pain because he properly considered the treating physician's failure to prescribe, and claimant's failure to request, any serious medical treatment for the claimant's supposedly excruciating pain.); Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000) (finding the claimant's testimony

was not credible because her complaints of pain were inconsistent with her failure to see a physician for two years and her continued cigarette smoking was inconsistent with her complaints of asthma). Compare Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled."); Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (noting that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits); Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000) (holding that minimal daily activities do not establish that a person is capable of engaging in substantial physical activity); Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998).

## VI   Conclusion

The Court concludes there is sufficient relevant evidence in the record as reasonable minds might accept as adequate support for a conclusion Plaintiff is not disabled, even if it is possible, at best, to draw a contrary conclusion from the evidence. Therefore, the ALJ's conclusion Plaintiff's mental impairments do not render him completely unable to work should not be reversed. See Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment is **DENIED**, and Defendant's cross-motion for summary judgment is **GRANTED**. Judgment shall be entered in favor of Defendant and against Plaintiff with regard to the charges stated in the complaint.

**IT IS FURTHER ORDERED** that, as a result of the Court's determination that judgment in favor of Defendant is appropriate, the Clerk of the Court shall enter judgment accordingly.

DATED this 31st day of July, 2006.


_____
Mark E. Aspey
United States Magistrate Judge

-37-